IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Joseph Terrell Smith, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Carolyn W. Colvin, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 6:15-4118-MGL-KFM <br><br> **REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civ. Rule 73.02(B)(2)(a)(D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on March 19, 2012, alleging that he became unable to work on September 3, 2011. The applications were denied initially and on reconsideration by the Social Security Administration. On January 7, 2013, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Carroll H. Crawford, M.Ed., C.R.C., an impartial vocational expert appeared on April 1,

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

2014, considered the case *de novo*, and on August 15, 2014, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on September 21, 2015. The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.
>
> (2)    The claimant has not engaged in substantial gainful activity since September 3, 2011, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq*. and 416.971 *et seq.*).
>
> (3)    The claimant has the following severe impairments: Crohn's disease, status post ileocolectomy and bowel resection, with chronic diarrhea; and obesity (20 C.F.R. §§ 404.1520(c) and 416.920 (c)).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), except with some limitations. Due to symptomology, the claimant is only able to lift up to ten pounds occasionally, lift or carry less than ten pounds frequently, and is only able to stand and/or walk for up to an aggregate of two hours in an eight-hour work day, although he can sit for at least six hours in an eight-hour workday. Posturally, the claimant is capable of occasional stooping, balancing, crouching, kneeling, and climbing of ramps or stairs, however, he must avoid all crawling or climbing of ladders, ropes, and scaffolds. Additionally, the claimant must be allowed to work in a location with easy access to the restroom.
>
> (6)    The claimant is capable of performing some of his past relevant work as a payroll clerk and administrative assistant.

> This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).
>
> (7)  The claimant has not been under a disability, as defined in the Social Security Act, from September 3, 2011, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

3

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

4

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff has a history of Crohn's disease since at least 2009, when he underwent surgical removal of a diseased section of the small bowel (an ileocolectomy) (Tr. 367). Spencer J. Jenkins, M.D., his surgeon, indicated that the plaintiff was doing very well, overall, following surgery. Dr. Jenkins noted that the plaintiff had "severe disease" and would "need to be on something to try and prevent recurrence" (Tr. 363).

In June 2011, while he was working as a pharmacy technician, the plaintiff sought emergency room treatment at Sisters of Charity Providence Hospital for neck and low back pain. He had not had any problems with his Crohn's disease (Tr. 282). X-rays of the thoracic and lumbar spines showed no acute findings and he was diagnosed with thoracic and lumbar strain (Tr. 282, 285-87).

Later that month, the plaintiff underwent an upper endoscopy with biopsy by Dr. Jenkins, which revealed nonerosive gastritis, gastroesophageal reflux disease ("GERD"), and a small hiatal hernia (Tr. 292). A colonoscopy with biopsy that day revealed probable mild recurrent Crohn's disease at the anastomosis (surgical connection), which Dr. Jenkins indicated was not unexpected (Tr. 296-97). Dr. Jenkins noted that the plaintiff had not complied with follow up for his Crohn's disease and had not started prophylactic medication, as planned two years ago, although he had not had problems in the past two years until recently (Tr. 296).

On August 8, 2011, the plaintiff sought emergency room treatment at Providence Hospital for abdominal pain (Tr. 275-79). His most recent flare-up of Crohn's

disease had been in 2008 (Tr. 275). He was on no medication (Tr. 276). A CT scan showed improvement with resolution of inflammatory changes in the lower right quadrant (Tr. 277, 280). Medical personnel advised the plaintiff that it was very important to follow up with Dr. Jenkins and to be responsible for his chronic illness despite feeling well (Tr. 277).

When the plaintiff returned to Dr. Jenkins on August 11, 2011, he acknowledged that he had felt well for the past two years and was working as a pharmacy technician at Walgreens. He reported an acute onset of abdominal pain in the right lower quadrant three days earlier, which had resolved with pain medication. Dr. Jenkins reviewed the hospital report, which included normal laboratory findings and CT scans showing no acute inflammatory findings. The plaintiff had no ongoing pain, but was concerned about reflux, which had preceded his symptoms of Crohn's disease in the past (Tr. 307). An examination revealed abdominal pain, belching, and heartburn, but no back pain (Tr. 308). Dr. Jenkins advised the plaintiff of the chronic nature of Crohn's disease and recommended medication to prevent recurrence (Tr. 309).

On August 19, 2011, Dr. Jenkins performed a colonoscopy and noted that the Crohn's disease was recurring at the anastomosis:

> [This] is not unexpected. It is possible, I suppose, these changes could simply be from ischemia at the anastomosis. However, I think it would be reasonable to expect some recurrent disease here.

(Tr. 296). A biopsy was also performed that demonstrated chronic inflammation (Tr. 299).

Treatment notes from Dr. Jenkins dated October 20, 2011, show that the plaintiff felt better, overall, on Entocort (medication for Crohn's disease), with some mild reflux on Dexilant and only occasional, mild abdominal pain (Tr. 304). Dr. Jenkins indicated that an upper endoscopy in August 2011 (Tr. 294) had revealed mild gastritis (Tr. 302). It had also revealed probable mild recurrent disease versus post-operative ischemic changes

6

at the anastomosis (Tr. 304). Dr. Jenkins concluded, overall, that the plaintiff did not appear to have significant recurrent disease, although he was at risk "for sure." Dr. Jenkins' review of systems noted that the plaintiff had abdominal pain, bloody stools, gets full quickly at meals, and heartburn (Tr. 305). Dr. Jenkins recommended that the plaintiff complete the taper of Entocort and return in six weeks (Tr. 306).

At his return visit in December 2011, the plaintiff was "doing well," overall, with no abdominal pain. Dr. Jenkins noted that the plaintiff had bloody stools and heartburn (Tr. 302). His GERD had improved on Dexilant, and Dr. Jenkins advised that he return in three months (Tr. 303).

On May 8, 2012, the plaintiff was seen at Providence Hospital emergency room with complaints of low back, leg, and abdominal pain, malaise, weakness, diarrhea, and bloody stools (Tr. 322). An examination revealed muscle spasm in his back, but no motor or sensory deficits (Tr. 324). X-rays of his spine and pelvis were normal, and he was discharged with medication (Tr. 329-30).

Rebecca Meriwether, M.D., a state agency physician, reviewed the medical and other evidence of record on July 23, 2012, and assessed the plaintiff with the residual functional capacity ("RFC") for light work (Tr. 83-84).

The plaintiff sought emergency room treatment at Providence Hospital again in August 2012 for abdominal and back pain (Tr. 335). He had seen Dr. Jenkins ten days earlier, when he began to experience abdominal pain, increased stooling, and blood in his stool, but his symptoms worsened to stooling one to eleven times per day (Tr. 335). The plaintiff also reported a flare-up of Crohn's disease in May 2012, but had not filled a prescription for Prednisone from that time. The plaintiff was in mild distress, with his symptoms of pain assessed as moderate in severity, but an examination showed no limitations (Tr. 335-37). He was not on medication (Tr. 336). The plaintiff was given pain medication and was advised to contact his gastroenterologist (Tr. 338).

7

The plaintiff returned to Dr. Jenkins on September 6, 2012, for "follow up after quite a while." Dr. Jenkins noted, "[H]aving 10 loose BM per day and some lower abdominal pain...Notes chronic fatigue and some decreased appetite. Just does not feel well" (Tr. 343). On this visit, Dr. Jenkins' review of systems noted abdominal pain and swelling and diarrhea (Tr. 344). Dr. Jenkins also noted that the plaintiff had "not followed up as planned." The plaintiff had not been on medication for Crohn's disease and had no insurance, as he was not working. Dr. Jenkins noted that the plaintiff was having issues with insurance and cannot afford his medication at the present time (Tr. 343). Dr. Jenkins also stated that he was not sure the Mesalamine products would be effective (Tr. 345). A physical examination showed a non-tender abdomen and normal bowel sounds (Tr. 344). Dr. Jenkins had a long discussion with the plaintiff about the need for close follow up and the importance of considering medication for Crohn's disease (Tr. 345). He referred the plaintiff for a CT scan of the pelvis in September 7, 2012, which was unremarkable, with no masses or inflammatory changes and no evidence of active disease (Tr. 346-47).

On a form to assess the plaintiff's RFC dated October 11, 2012, Dr. Jenkins indicated that he was unable to assess the plaintiff's physical ability given the nature of Crohn's disease (Tr. 378-79). He noted that the plaintiff may not feel well intermittently due to his disease; may have abdominal pain, diarrhea, and fatigue; and required regular physician follow up visits (Tr. 378). Dr. Jenkins explained that the plaintiff had improved after surgery in 2009, but in 2011 and 2012, some recurrent disease had appeared at the surgical anastomosis. He indicated that the plaintiff currently described chronic loose stools, fatigue, and pain that appeared to result from his disease and may limit his ability to work full time. Dr. Jenkins stated that the plaintiff required the use of a bathroom at unlimited junctures for unlimited periods of time during the day at his own option. Dr. Jenkins concluded that he was trying to treat the plaintiff's illness medically (Tr. 379).

In a questionnaire dated October 18, 2012, Dr. Jenkins was asked whether the plaintiff "would require the right to use a bathroom at unlimited junctures for unlimited periods of time during the day at his own option without regard to a preset schedule." Dr. Jenkins responded that the plaintiff may need this privilege intermittently (Tr. 381).

On October 23, 2012, Dr. Jenkins indicated that the plaintiff's CT scan and labs were okay, he had mildly elevated C-reactive protein (used to detect inflammation), and a colonoscopy had revealed some disease at the anastamosis and into the neoterminal ileum, but with no significant stricture. Dr. Jenkins gave the plaintiff samples of Entocort, as he was "having issues" with insurance and could not afford medication. The plaintiff reported that he felt better on Entocort (Tr. 400).

Dr. Jenkins' treatment notes from December 20, 2012, show that the plaintiff was awaiting approval for assistance in obtaining Cimzia (a medication for Crohn's disease), but reported that he had been feeling better lately. He still had some diarrhea, but was more active and was taking Entocort three times per day (Tr. 397). Dr. Jenkins' review of systems showed that the plaintiff was still having abdominal pain. Dr. Jenkins concluded, "I suspect that part of the issue is the prior TI resection/bile acid induced diarrhea" (Tr. 399).

Darla Mullaney, M.D., a state agency physician, reviewed the medical and other evidence of record on December 31, 2012, and assessed the plaintiff with the RFC for light work (Tr. 107-08).

At a return visit to Dr. Jenkins on March 6, 2013, the plaintiff's Cimzia had been approved, he was off Entocort, and, overall, he was doing well. He had only mild fatigue, no pain, and was starting an exercise program (Tr. 394). Dr. Jenkins also "encouraged him to pursue employment as well" (Tr. 396).

The plaintiff sought emergency room treatment at Providence Hospital on June 7, 2013, for symptoms including headaches and nausea (Tr. 382). He felt better with medication and was discharged to follow up with his primary care physician (Tr. 385).

When the plaintiff returned to Dr. Jenkins on June 26, 2013, he had been on Cimzia for two months and felt well. He reported mild, intermittent loose stools, but had good energy and no abdominal pain or malaise (Tr. 391).

On October 29, 2013, Dr. Jenkins indicated that the plaintiff was "doing very well on Cimzia" and had no pain, great energy, and normal bowel movements (Tr. 388). He concluded that the plaintiff was "[d]oing very well!!" and seemed "great mentally." He encouraged the plaintiff to keep up his healthy, active lifestyle and noted that he would soon begin a new job (Tr. 390).

The plaintiff presented to Providence Hospital in December 2013 with back pain, but an examination was unremarkable (Tr. 403-404).

At a return visit on February 6, 2014, Dr. Jenkins indicated that the plaintiff had been doing "very well" on Cimzia until one month earlier. Dr. Jenkins noted that the plaintiff was now having diarrhea with rectal bleeding and mid-lower abdominal pain, even though he had not missed any of his medication (Tr. 410). An examination revealed no musculoskeletal symptoms, and the plaintiff reported that he was feeling well (Tr. 411). Dr. Jenkins was unclear whether the plaintiff's symptoms were from active Crohn's disease, given that he was taking Cimzia. If so, he planned to change the plaintiff's Cimzia to every two weeks (Tr. 412)

The pathology report from a colonoscopy performed on February 18, 2014, showed active chronic destructive colitis with degenerative changes in the distal rectal area. Additionally, the colon was actively inflamed. At the anastomosis, there was active chronic destructive enteritis (Tr. 415). Dr. Jenkins' impression was "active Crohn's disease in the ileocolonic anastomosis; distal rectum; and perianal area." Dr. Jenkins increased the

Cimzia dosage to 400 mg subcutaneously every two weeks and recommended the plaintiff return for follow up in two months (Tr. 418).

The plaintiff testified at the administrative hearing that he drove once a week and made three or four trips each week to shop at various convenience stores or the pharmacy (Tr. 44). He went to church weekly. The plaintiff estimated that he did not feel well and experienced pain approximately 18 to 19 days per month. He prepared some meals for himself, although he lived with his family and was "not too big on cooking" (Tr. 45). He was able to wash his own clothes, collect and take out the trash on occasion, and make his bed (Tr. 47).

The plaintiff also testified that in October 2013, six months earlier, he had interviewed for an internet writing job, but he did not feel well enough to return for a second interview (Tr. 56). He explained that his back pain worsened with a flare up of his Crohn's disease and, when his symptoms were bad, he needed to use the restroom ten to twenty times per day (Tr. 57). When asked if he wanted to work, the plaintiff answered, "Yes, I do" (Tr. 61).

## **ANALYSIS**

The plaintiff was 26 years old on his alleged disability onset date (September 3, 2011) and 29 years old on the date of the ALJ's decision (August 15, 2014) (Tr. 38). The plaintiff graduated from high school and attended three years of college (Tr. 39). He has past relevant work experience as a pharmacy technician, payroll clerk, administrative assistant, and teacher's assistant (Tr. 23).

The plaintiff argues that the ALJ erred in: (1) failing to assess the issue of intermittent incapacity; (2) failing to properly assess his credibility; (3) failing to properly evaluate the opinion of treating physician Dr. Jenkins; (4) stating that the plaintiff was not disabled because on some occasions the treating physician used terms such as "doing

well"; and (5) in relying on the opinions of non-examining state agency physicians (pl. brief at 1).

### *Intermittent Incapacity and Dr. Jenkins' Opinion*

The plaintiff first argues that the ALJ erred in failing to assess the issue of intermittent incapacity and in failing to properly evaluate Dr. Jenkins' opinion regarding intermittent disability due to diarrhea (pl. brief 2-7, 10-15). The regulations require that all medical opinions in a case be considered, 20 C.F.R. §§ 404.1527(b), 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with which the physician supports his opinion; (5) the consistency of the opinion; and (6) whether the physician is a specialist in the area in which he is rendering an opinion. *Id.* §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled" or "unable to work" or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in SSR 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory

> diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

In assessing a claimant's RFC, the ALJ must discuss the individual's ability to perform work on a regular and continuing basis, which "means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1, 7. The Fourth Circuit Court of Appeals has stated, "The ALJ must consider this question and make specific findings on whether [the claimant's] intermittent incapacity constitutes an inability to perform any substantial gainful activity."*Totten v. Califano*, 624 F.2d 10, 12 (4th Cir. 1980). *See also Rosato v. Barnhart*, 352 F.Supp.2d 386, 397 (E.D.N.Y.2005) (finding ALJ erred in discrediting the plaintiff's testimony based upon "frequent periods of improvement" where her alleged disability was of unpredictable and intermittent nature).

As set forth above, in October 2012, Dr. Jenkins indicated that he was unable to assess the plaintiff's physical ability given the nature of Crohn's disease. He noted that the plaintiff may not feel well intermittently due to his disease; may have abdominal pain, diarrhea, and fatigue; and require regular physician follow up visits. He stated that the plaintiff currently described chronic loose stools, fatigue, and pain that appeared to result from his disease and may limit his ability to work full time. Dr. Jenkins stated that the plaintiff required the use of a bathroom at unlimited junctures for unlimited periods of time during the day at his own option (Tr. 378-79).

The ALJ considered this opinion and gave it "appropriate weight" (Tr. 23). Specifically, the ALJ found that it "appears" the plaintiff "still has extensive residual

functional abilities despite not feeling well 'intermittently'" (Tr. 23 (quoting Tr. 378-79)). The ALJ noted that Dr. Jenkins stated that the plaintiff would have abdominal pain, diarrhea, and fatigue without proper follow up care.  The ALJ further noted that the plaintiff "had a history of not following up with care," which contrasted with the plaintiff's "disposition when he was taking his medication."  The ALJ acknowledged that the plaintiff "does appear to have relapsed," but noted that the relapse was "for one month in February of [2014][2] after many months without hospital visits or reports of symptoms" (Tr. 23).

In another questionnaire that same month,  Dr. Jenkins was asked whether the plaintiff "would require the right to use a bathroom at unlimited junctures for unlimited periods of time during the day at his own option without regard to a preset schedule."  Dr. Jenkins responded that the plaintiff may need this privilege intermittently (Tr. 381).  The ALJ considered this questionnaire and gave it "little weight," finding that its tone was "extremely leading" and it was not well supported by Dr. Jenkins' treatment notes or the weight of the evidence of record.  The ALJ stated that he gave more weight to Dr. Jenkins' treatment notes, which indicated reasonable control of the plaintiff's symptoms when he was compliant with medication and treatment.  The ALJ further stated that he addressed the plaintiff's symptoms by increasing the exertional limitations in the RFC finding and adding the limitation that the plaintiff be allowed easy access to the restroom (Tr. 23).

As argued by the plaintiff, in evaluating the plaintiff's RFC, the ALJ failed to assess the issue of intermittent incapacity due to diarrhea (pl. brief at 2-7).  The ALJ did provide in the RFC that the plaintiff "must be allowed to work in a location with easy access to the restroom" (Tr. 18); however, there is no reason to make such a finding unless the plaintiff has a problem with chronic diarrhea, and the finding only provides an architectural configuration rather than any finding as to the frequency the plaintiff needed to use the

---

[2]The ALJ stated that the relapse was in February 2013, but this is obviously a scrivener's error as the cited treatment notes are from February 2014 (*see* Tr. 410).

14

bathroom (pl. brief at 4). The vocational expert testified at the hearing that having a bathroom nearby would make no difference if the hypothetical individual had chronic diarrhea that caused him to be away from his work station for more than 30 minutes a day at unpredictable intervals (Tr. 70), as the plaintiff testified he would need when he had a flare-up (Tr. 57-58).

Moreover, in the RFC assessment, the ALJ discounted the plaintiff's credibility as well as the intermittent nature of his disease by criticizing the plaintiff for failing to take medication and seek follow up treatment (Tr. 21, 23). The plaintiff argues that this was error because the ALJ did not consider his reasons for not following up or failing to take medication (pl. brief at 7-8). The undersigned agrees. Specifically, while Dr. Jenkins noted several times that the plaintiff had not followed up with treatment or was not taking his medication, he also noted in the same records that the plaintiff had no insurance or was having issues with insurance and could not afford his medication (*see* Tr. 343, 345, 394, 397, 400). Moreover, after the plaintiff was approved for assistance in obtaining Cimzia in March 2013, treatment notes show that he was compliant with his medication (Tr. 388, 391, 394, 410, 418), and the February 2014 relapse cited by the ALJ in the RFC assessment (Tr. 23) occurred even though the plaintiff had not missed any of his medication at that time (Tr. 410).

An individual's medical treatment history is one of the factors that an ALJ may consider in assessing his credibility. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96–7p, 1996 WL 374186, at *3. However, the Fourth Circuit has found that a "claimant may not be penalized for failing to seek treatment he cannot afford; '[i]t flies in the face of the patent purpose of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)). While an "individual's statements may be less credible if the level or frequency of treatment

is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure[,] . . . the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . ." SSR 96–7p, 1996 WL 374186, at *7. Courts in this district have consistently found remand necessary where the ALJ considered the claimant's failure to seek treatment as a factor in the disability determination despite evidence in the record of the claimant's inability to afford treatment. *See, e.g., Camper v. Colvin*, C.A. No. 1:14-4801-MGL-SVH, 2015 WL 7566266, at *16 (D.S.C. Oct. 16, 2015) (finding credibility analysis was flawed and remanding because "it appears that the ALJ drew negative inferences about Plaintiff's failure to pursue additional testing and treatment without considering indications in the record that Plaintiff lacked the financial resources to obtain such treatment"), *R&R adopted by* 2015 WL 7568595 (D.S.C. Nov. 24, 2015); *Brownlee–Nobs v. Colvin*, C.A. No. 1:14–cv–03988-JMC, 2015 WL 5908524, at *14-15 (D.S.C. Oct. 7, 2015) (remanding where ALJ "failed to make specific findings regarding the resources available to Plaintiff and whether her failure to seek additional treatment and medication was based upon her inability to pay").

The undersigned cannot say that the ALJ's decision is based upon substantial evidence given the evidence of the intermittent nature of the plaintiff's condition that the ALJ did not address as well as the ALJ's failure to consider the plaintiff's inability to afford treatment and/or medication. Accordingly, upon remand, the ALJ should consider and make specific findings as to whether the plaintiff's alleged intermittent incapacity as opined by Dr. Jenkins constitutes an inability to perform substantial gainful activity. The ALJ should also consider and make factual findings regarding the plaintiff's financial situation and its impact on his ability to seek medical treatment and medication in evaluating the plaintiff's credibility and in assessing his RFC. *See Dozier v. Colvin*, C.A. No. 1:14-cv-29-DCN, 2015

WL 4726949, at *4 (D.S.C. Aug. 10, 2015) (remanding case due to ALJ's improper penalization of the claimant for her failure to seek treatment and instructing ALJ to make factual findings regarding the claimant's financial situation and its impact on her ability to seek medical treatment)*.*

*Remaining Allegations of Error*

In light of the court's recommendation that this matter be remanded for further consideration as discussed above, the court need not address the plaintiff's remaining issues, as they may be rendered moot on remand. *See Boone v. Barnhart*, 353 F.3d 203, 211 n. 19 (3d Cir.2003) (remanding on other grounds and declining to address claimant's additional arguments). The ALJ will be able to reconsider and re-evaluate the evidence as part of the reconsideration. *Hancock v. Barnhart*, 206 F. Supp.2d 757, 763–764 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect as it is vacated and the new hearing is conducted *de novo*). Accordingly, as part of the overall reconsideration of this claim upon remand, the ALJ should also consider and address the additional allegations of error raised by the plaintiff (pl. brief at 8-16).

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based on the foregoing, it is recommended that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

September 29, 2016
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).